LANIER, Judge.
This is an appeal from a decision of the State Civil Service Commission (Commission). The appellant is a classified employee who submitted a letter of resignation in 1984. He subsequently appealed his termination by resignation contending his resignation was obtained by duress. This appeal was ultimately compromised. As part of the compromise, the appellant’s resignation was rescinded, and he was reinstated without back pay. The compromise agreement did not specifically address the effects of the reinstatement on the appellant’s seniority status. In 1986, the appellant was laid off due to budget cuts. For purposes of determining the appellant’s seniority status for layoff purposes, the appointing authority treated the eight month period between the appellant’s resignation and reinstatement as leave of absence without pay, gave the appellant only thirty days of seniority credit for this period of time, and determined that the appellant was an appropriate candidate for layoff under the pertinent Civil Service Rules.[1] The appellant appealed contending the eight month period of time was layoff time (not leave of absence without pay time), he was entitled to full seniority credit for this eight month period, with this credit he had seniority over another employee, and, accordingly, he should not have been laid off. This appeal was heard by a referee who ruled the eight month period was leave of absence without pay time for which the appellant only got thirty days credit and affirmed the layoff by the appointing authority. The appellant applied for review of this ruling by the Commission, which was denied. This appeal followed.
FACTS
On November 19, 1984, Leonardo Mara-diaga signed a resignation form indicating that for personal reasons he resigned from his classified position as Laborer Utility for the University of New Orleans (UNO), effective at the close of business on November 19, 1984. Maradiaga then appealed this termination[2] alleging that the resignation was submitted under duress. This appeal was compromised by the parties in a written agreement dated July 19, 1985, which provided as follows:
(1) The resignation letter dated 11-19-84 which was signed by Mr. Maradiaga and Walter Tarwid will be rescinded and removed from his personnel file.
(2) Mr. Maradiaga will be entitled to no retroactive back pay.
(3) Mr. Maradiaga will not receive a step increase upon reinstatement for which he would have been eligible for consideration in May, 1985.
(4) Mr. Maradiaga will be allowed to reimburse the University for the annual leave for which he was paid and will be recredited with 69.4324 hours of annual leave.
(5) Mr. Maradiaga will be credited with 42.9324 hours of unused sick leave which he had remaining at the time of his resignation.
(6) The University will not be liable for any attorneys’ fees for Mr. Maradiaga.
(7) Mr. Maradiaga will not receive any annual or sick leave accrual for the period between the resignation and the reinstatement.
(8) Mr. Maradiaga will be reinstated with his former rate of pay to the same position previously held (Laborer Utility in Physical Plant Services at $4.55 per hour).
Maradiaga returned to work on July 22, 1985. On August 12, 1985, the Commission approved the compromise. Maradiaga’s personnel file maintained by the Department of State Civil Service designated the period of November 20, 1984, through July 22, 1985, as leave without pay time. The referee found as a fact that this designation in Maradiaga’s personnel file was “[i]n accordance with the settlement proposal....”
*581 Because of legislative budget cuts, UNO was required to layoff twenty employees in 1986. Pursuant to a layoff plan approved by the Commission, Maradiaga was advised by a letter dated July 21, 1986, that he would be laid off effective at the close of business on August 1, 1986. Maradiaga then took this appeal.
Maradiaga and UNO have stipulated to the following:
(a) Without crediting claimant seven months, two days (the classified state service to which he would have been entitled, without reference to his absence between November 19, 1984 and July 19,1985) it is stipulated that claimant was properly laid off from Laborer Utility class 2074 on August 1, 1986. '
(b) With such credit as in stipulation (a), it is stipulated that claimant would have had seniority over at least one other employee in Laborer Utility class 2074, and would not have been laid off on August 1, 1986.
CLASSIFICATION OF MARADIAGA’S SERVICE FROM NOVEMBER 20, 1984, THROUGH JULY 21, 1985
Maradiaga contends the referee erred by classifying the eight month period as leave of absence without pay time and applying Civil Service Rules 1.39.2(a)(1) and (b)(9)b. He asserts the eight month period should be classified as layoff time subject to Civil Service Rules 1.39.2(a)(1) and (b)(3). He further asserts the compromise agreement is silent on the issue of how to classify this time period, and this silence should be construed in his favor and against UNO. Finally, he avers that, if the time period is properly classified as layoff time, he would have sufficient seniority time to avoid a layoff and, in this factual posture, his layoff was improper and he should be reinstated retroactively with full benefits.
Civil Service Rule 17.16 provides for the order of layoffs by appointment and status and states, in pertinent part, that “[w]ithin each ... permanent appointment status, layoff shall be according to length of State service; those with the least service shall be laid off first.” What constitutes “State Service” for layoff purposes is set forth in Civil Service Rule 1.39.2, in pertinent part, as follows:
1.39.2 ‘State Service’, for the purposes of layoff and layoff avoidance measures, means the total length of Classified State Service in the equivalent full-time years, months, and days as an employee of a State agency or agencies subject to the following:
(a) Periods of time not counted as Classified State Service under this definition for the purposes of layoff and layoff avoidance shall be:
1. All leave without pay not expressly authorized in Subsection (b)9 of this Rule.
[[Image here]]
(b) Periods of time counted as Classified State Service under this definition for the purpose of layoff or layoff avoidance measures are the following:
[[Image here]]
3. Absence from State Service of not more than one year as the result of a layoff of an employee with permanent status.
[[Image here]]
9. Authorized leave without pay under the following conditions:
[[Image here]]
b. Any period(s) of leave without pay which does not exceed 30 calendar days, if taken after January 1, 1983. Additionally, if any period of leave without pay taken after January 1, 1983 equals or exceeds a 30 calendar day period, i.e., a reportable action to Civil Service, 30 days of one reportable period shall be counted in any calendar year, i.e., January 1, 1983 through December 31, 1983.
Layoff is defined in Civil Service Rule 1.19 as “the removal of an employee from a position because of lack of work, lack of funds, or for other causes other than disciplinary ones.” Leave of absence without pay is defined in Civil Service Rule 1.20 as “leave or time off from work granted by the appointing authority, for which period the employee receives no pay.”
*582 The referee classified the eight month period as leave of absence without pay with the following rationale:
Additionally, the manner in which the settlement between the parties was executed and the specific words used evidence an intent by the parties not to include the eight months during which appellant was off because of the alleged resignation, to be counted for purposes of seniority. More specifically, the settlement proposal, which was signed by counsels on behalf of both appellee and appellant, states that appellant should be given no retroactive back pay for that time, that appellant would not be credited with annual or sick leave which would have accrued during that period of time, and that appellant would not receive the merit increase for which he became eligible during that period of time. Clearly, there was no intention to treat appellant as though he had been on duty status during the period between November 19, 1984, and July 22, 1985. Although the settlement agreement is silent as to how the time between the resignation and the reinstatement was to be counted for seniority purposes, the fact that appellant was placed on leave without pay during this period of time is dispositive of the issues involved in this case.
A layoff is a lawful removal of an employee from his position for a nondisciplinary reason. It is implicit in the definition of layoff that the removal is by the appointing authority. Pursuant to Civil Service Rule 1.38, a resignation is a voluntary termination by an employee of his employment. A resignation is not a layoff. The facts in this case show that Maradiaga submitted a resignation which he subsequently contested as involuntary. As part of the compromise of this dispute, Maradia-ga was reinstated in his former position at his former pay. A reinstatement is defined in Civil Service Rule 1.36 as “the restoration of a former Classified employee to duly and pay status pursuant to an order issued by the Commission....” When Maradiaga was reinstated, it was without back pay, step increases or annual and sick leave accrual. Thus, in the compromise, Maradiaga was given, in effect, “time off from work ... by the appointing authority, for which period the employee receives no pay.” The referee correctly concluded this was a leave of absence without pay, rather than a layoff.
The appellant’s assignments of error are without merit.
DECREE
For the foregoing reasons, the decision of the Commission is affirmed at appellant’s cost.
AFFIRMED.

. Civil Service Rule 17.16 provides for the order of layoff and provides, in part, that those with the least service shall be laid off first.

. Civil Service Rule 1.38 defines a resignation as a voluntary termination by an employee of his employment.